No. 48.—ISAAC HART and another, adm'rs, plaintiffs in error, *vs.* SAMUEL HOLLY and another, defendants in error.

[1.] Under the Act of 1847, to simplify pleadings, an action was brought on a note which had been due more than six years, but which had on it, se-

veral credits; and among them, a credit made within six years, next before the commencement of the suit, but not within six years, next after the making of any other of the credits, or within six years, next after the maturity of the note: *Held*, that the action might well be brought under the Act.

Suit on note, in Marion Superior Court. Tried before Judge WORRELL, February Term, 1855.

This was an action brought under the Act of 1847, "to simplify and curtail pleadings at law." It was upon a note for $233 33, dated July 12th, 1838, and due 25th December next thereafter. There were, on the note, several receipts, dated, respectively, 2d February, 1839, May 7th, 1839, June 4th, 1839, January 13th, 1840, and February 5th, 1853.

The Court below decided that the plaintiffs could not recover in this form of action, upon this note; and this is the error assigned in this case.

Another point was made but not decided in this Court.

BLANDFORD; HALL, for plaintiff in error.

SMITH & POU ; B. HILL, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] The action in this case, was in the form authorized by the third section of the Act of 1847, "to simplify and curtail pleadings at law"—a section which is in these words: "The form of an action to recover money on a note, bill, bond, receipt, or written promise of any description, by adding a copy of which, with the endorsers names (if any) and credits, shall be appended," &c. "may be as follows, to wit:" (the form adopted in this case.)

One of the credits on the note was dated in 1853; a date which was within less than six years, next before the commencement of the suit, but not within six years, next after

any one of the other credits, or next after the maturity of the note.

This credit was in the following words : " Received on the within note, fifty dollars, February 5th, 1853."

The Court below dismissed the action, considering it not to have been authorized by the Statute.

Was that decision right ?

The words, "written promise of any description," which are employed in the Statute, include writings in which there is a promise understood, as well as writings in which there is a promise expressed.   Unless the words do this, they do not include any indorsement ; for, in general, no indorsement contains more than an understood promise.   And it is certain, that it was not the intention to exclude, altogether, from the Statute, understood promises ; for the Statute mentions bills and receipts, by name, and these are but the signs of understood promises.

Taking, then, these words in the Statute, to extend to writings in which the promise, although not expressed, is understood, is the credit aforesaid such a writing ?

That credit was, it is to be presumed, as the case stands, entered with the assent of the maker of the note.   The motion of the defendant, to dismiss the case for insufficiency in the declaration, admitted the truth of the statements contained in the declaration.   And among those statements was that of this credit.

But if the credit was entered with the assent of the maker of the note, the credit is a writing from which is to be implied a promise, on the part of the maker, to pay the balance due on the note.   That this is true, has been determined by a vast number of decisions.

It seems, then, that this credit is within the Statute—within the *reason and spirit* of the Statute.

It is, also, in form, it may be remarked, within the very *words* of the Statute : for it is, in form, a receipt ; and receipts make one of the classes of writings enumerated by name, in the Statute.

The action, therefore, in this form, might well be brought under the Statute.

And in this conclusion, there is nothing at variance with the decision in *Van Buren vs. Webster*, (12 *Ga. R.*) for in that case there was no writing at all. The promise relied on, was a verbal one.

These, I think, are the reasons which lead a majority of the Court to conclude that this action was well brought in the form authorized by the Act of 1847, and, therefore, that it should not have been dismissed by the Court below.

I, too, come to the same conclusion, but for different reasons. In my opinion, it is the old promise, and not the new, which, in cases of this kind, has to be the foundation for the suit. If there is one single English decision in favor of the position, that the new promise can, in such cases, be the cause of action, I have never seen it. If there is a single English form, in any book of forms of pleading for a suit on a new promise, as the cause of action, I have never seen it. In *Hyleing vs. Hastings*, (1 *Ld. Ray.* 389, 421,) it is said, that "*Holt* C. J. reported to the King's Bench, that he had put this case to all the Judges of England, (except *Lechmere*) assembled at Serjeant's Inn, and that they were all of opinion, that this conditional promise had brought the case out of the Statute of Limitations; and that a general *indebitatus assumpsit* might well be maintained, because the defendant has waived the benefit of the Statute."

The decision is, that the promise had brought the case *out of* the Statute; the reason of the decision is, that the defendant, by the promise, had *waived* the benefit of the Statute.

This decision is a good exponent of what was the law of England, on this question, at the era of our Revolution, and for nearly a century before. And whatever was the law of England, at that era, became, by adoption, the law of Georgia.

The question, whether it is the old promise or the new, that shall be the cause of action, is, it seems to me, a question about means, not ends. Whichever it be that is to be the cause of

action, the *cases* which will be saved or not saved from the operation of the Statute of Limitations, will be the very same.

This being so, the ends, I think, will be better attained by letting the old promise remain the cause of action, than they will be by making the new the cause of action.

If the new promise be made the cause of action, there may happen cases in which the rule will not work well, if it will work at all.

For example, what would be the period of limitation for an action, the cause of which was a new promise to pay a barred promissory note, or a barred draft? Six years, or four? Or for an action, the cause of which was a new promise to pay a barred bond—twenty years, or four?

In the case of a new promise to pay a barred debt, secured by note, draft or bond, and the death of the promissor before performance of the promise, what would be the rank of the debt against the dead man's estate—the rank of a bond debt, or that of an open account?

In the case of a new promise to pay a barred negotiable instrument, and of the transfer of the instrument after the making of the new promise, what would be the transferee's cause of action? Not the old promise; for the rule says, it is the new promise, and not the old, that must be the cause of action. Not the new promise, because that it is a promise which was not made to the *transferee ;* and besides, is such a promise as is not negotiable.

The rule, over and above the difficulty it would have with these cases, and perhaps others which do not occur to me, would raise a grave question of strict law—the question, whether a new promise, *without a new consideration,* can bind ; the question whether, if the old promise is not sufficient to support an action, it can be sufficient to support a new promise which is to support an action?

In short, I see not as much as one reason for the introduction of this new rule, and I think I see several reasons against its introduction.

Adhering, as I do, to the opinion, that it is the old promise and not the new which, in this case, ought to be considered the cause of action, I have no difficulty in agreeing with the majority of the Court in the *judgment* which they think ought to be pronounced in the case.    That judgment is, that it was error in the Court below to regard the action as not having been authorized by the said Act of 1847 ; and for that reason, to dismiss the action.

This being the judgment of this Court, it becomes unnecessary to decide the other questions in the case.